UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────

UNITED STATES OF AMERICA

      - against -               95 Cr. 973 (JGK)
                             95 Cr. 980 (JGK)
ENRIQUE CARTY,

               Defendant.       OPINION AND ORDER
─────────────────────────────────

JOHN G. KOELTL, District Judge:

    The defendant Enrique Carty has moved for a reduction in
his sentence pursuant to 18 U.S.C. § 3582(c)  based on recent
amendments to the United States Sentencing Guidelines that
lowered the sentencing ranges for offenses involving crack
cocaine.


I.

A.

    In 1995, the defendant was charged with various offenses in
an indictment returned in the Western District of North Carolina
(see Indictment, 95 Cr. 973 (the "North Carolina Indictment")),
and in an information filed in this Court (see Information, 95
Cr. 980 (the "New York Information")).  The North Carolina
Indictment was transferred to New York and the cases were
consolidated for sentencing.  (See Sentencing Hr'g Tr.
("Sentencing Tr."), 20-21, Nov. 27, 2000.)  On November 28,
1995, the defendant pleaded guilty to Count One of the North
Carolina Indictment, which charged the defendant with

conspiracy, in violation of 21 U.S.C. § 846, to distribute cocaine and cocaine base in violation of 21 U.S.C. § 841(a)(1). (See Plea Hr'g Tr. 25, Nov. 28, 1995 ("Plea Tr."); North Carolina Indictment.)  At the plea hearing, the defendant admitted to being a part of a conspiracy to distribute crack cocaine, stating "I was part of that deal . . . I took the crack . . . I was going to help them so they could distribute it." (Plea Tr. 24-25.)  The defendant did not allocute to a specific quantity of crack cocaine at the plea hearing.

The defendant also pleaded guilty to Counts One and Two of the New York Information.  (Plea Tr. 25-28.)  Count One charged the defendant with conspiracy to distribute and possess with the intent to distribute five kilograms and more of cocaine in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A).  (New York Information.)  The defendant admitted at the plea hearing that he had entered into an agreement to distribute "[o]ver five kilograms" of cocaine.  (Plea Tr. 25-26.)  Count Two charged the defendant with conspiracy, in violation of 21 U.S.C. § 846, to distribute and possess with intent to distribute 100 grams and more of heroin in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(B).  (New York Information.)  The defendant pleaded guilty and stated that he had agreed to distribute and had distributed approximately 100 grams of heroin.  (Plea Tr. 26-28.)

On November 27, 2000,[1] the defendant was sentenced by Judge Schwartz of this Court. (See Sentencing Tr. 1.) Prior to pronouncing sentence, Judge Schwartz of this Court highlighted a disagreement among the defendant, the Government, and the Probation Department regarding the quantity of crack cocaine attributable to the defendant. (See Sentencing Tr. 3-9.) The Probation Department PSR listed two different quantities of crack cocaine: paragraph 15 of the PSR attributed eleven kilograms of crack cocaine to the defendant and over twenty-two kilograms of crack cocaine to the organization with which the defendant had conspired. (Presentence Investigative Report ("PSR") ¶ 15.) Paragraph 31 of the PSR stated, "the defendant's criminal activity involved the receipt and distribution of in excess of 1.5 kilograms of crack cocaine . . . at least 5 kilograms of cocaine and approximately 116 grams of heroin . . . When these amounts of narcotics are converted to marijuana their aggregate weight is approximately 30,300 kilograms of marijuana." (PSR ¶ 31.)[2]

The Government took the position that all of the crack cocaine in paragraph 15 of the PSR was attributable to the defendant. (Sentencing Tr. 7.) The defendant argued that,

---

[1] The five year gap between the defendant's plea and sentencing is attributable to the defendant's flight to the Dominican Republic for several years. (Sentencing Tr. 24-25.)
[2] The defendant did not contest the findings of the PSR with respect to 5 kilograms or more of cocaine or 116 grams of heroin.

despite his plea allocution to the contrary, he had not been involved in the distribution of crack cocaine. (Sentencing Tr. 3.)   After recounting the positions of the PSR, the Government, and the defendant, Judge Schwartz concluded, "[t]hat's all I have before me.  And now I am being asked to not only find that [the defendant] is responsible for a certain quantity of crack cocaine, but specifically for more than 1.5 kilograms.  I do not have enough in the record to make such [a] finding." (Sentencing Tr. 4.)  Judge Schwartz indicated that there was insufficient information in the record to make a finding as to the quantity of crack cocaine attributable to the defendant and offered the defendant a <u>Fatico</u> hearing to determine whether the defendant had distributed crack, and if so, what amount could be attributed to him for sentencing purposes. (Sentencing Tr. 6-8.)

The defendant decided that he did not want a <u>Fatico</u> hearing but rather, "would stand by the statements he made at the plea," and "would consent to the quantity of one and a half [kilograms of crack cocaine]." (Sentencing Tr. 9.)  Judge Schwartz reiterated, "your client [does] not wish to have a <u>Fatico</u> hearing" and "accept[s] that he is responsible for distribution of more than 1.5 kilograms of crack cocaine." (Sentencing Tr. 9.)  The defendant agreed. (Sentencing Tr. 9.)  The Judge made no finding as to what "more" meant, but rather relied on the

4

"1.5 kilograms or more" as the amount because, at the time, 1.5
kilograms of crack cocaine was sufficient to trigger the highest
base offense level under the Sentencing Guidelines.  (Sentencing
Tr. 21-22.)  Despite the Government's initial argument that the
entirety of the crack cocaine in the PSR should be attributed to
the defendant, the Government did not object to the defendant's
concession to 1.5 kilograms or argue that more drugs were in
fact attributable to the defendant.

The Judge then pronounced sentence.  Judge Schwartz grouped
together the two counts of the New York Information and the one
count of the North Carolina Indictment to create the basis for a
joint sentence, and announced that "[t]he base offense level for
these crimes, [is] set forth in paragraphs 30 and 31 of the
[PSR]. . . ."  (Sentencing Tr. 21.)  The Judge calculated that,
"the defendant's criminal activity, as he has now conceded,
involved the receipt and distribution of in excess of 1.5
kilograms of crack cocaine . . . at least five kilograms of
cocaine and approximately 116 grams of heroin in New York.  When
these amounts of narcotics are converted to marijuana, their
aggregate weight is approximately 30,300 kilograms of marijuana.
And under the drug quantity table, section 2D1.1(c)(1), the base
offense level is 38."  (Sentencing Tr. 21-22.)

Judge Schwartz granted a three-level acceptance of
responsibility downward adjustment for the defendant's

acceptance of responsibility for "more than 1.5 kilograms of
crack cocaine" and the remainder of the crimes to which he
pleaded guilty.  (Sentencing Tr. 26.)  However, the Judge also
found a two level obstruction of justice enhancement because the
defendant had fled from the United States to the Dominican
Republic.  (Sentencing Tr. 26-28.)  The Court declined to find
an enhancement based on the defendant's role in the offense, as
suggested in the PSR, as well as several downward adjustments
requested by the defendant.  (Sentencing Tr. 22.)  Based on the
defendant's net adjusted offense level of 37 and Criminal
History Category III, Judge Schwartz determined that the
defendant's Guidelines sentencing range was 262 to 327 months
imprisonment (Sentencing Tr. 28) and sentenced the defendant to
290 months imprisonment, "somewhere in the middle of the
[G]uideline[s] range . . . ."  (Sentencing Tr. 33.)  The Judge
also determined that the defendant should get credit for the
time he served while imprisoned in the Dominican Republic
awaiting extradition back to the United States.  (Sentencing Tr.
32-33.)

On November 28, 2000, Judge Schwartz filed written
judgments in both cases.  (See Judgment, 95 Cr. 0973; Judgment,
95 Cr. 0980 (collectively "Judgments").)  In the Statement of
Reasons in each of the Judgments, Judge Schwartz checked the box
that provided "[t]he court adopts the factual finding and

6

guideline application in the presentence report except . . . ."
(Judgments.)  In the space provided under "except," the Judge
indicated that he had departed from the PSR in two ways: by
finding no "Role Adjustment" and by finding an "Obstruction of
Justice" enhancement.  (See Judgments.)

After the sentence was imposed, the defendant appealed.
The Second Circuit Court of Appeals vacated the defendant's
sentence based on its determination that the district court may
have misunderstood its power to grant a sentencing departure for
the defendant's confinement conditions in the Dominican
Republic.  See United States v. Carty, 264 F.3d 191, 196-97 (2d
Cir. 2001) (per curiam).  The Court of Appeals remanded the case
for reconsideration of the defendant's request for a downward
departure on those grounds.  Id. at 197.  On November 9, 2001,
Judge Schwartz entered amended judgments and resentenced the
defendant again to a term of 290 months imprisonment.  (See Am.
J., 95 Cr. 973; Am. J., 95 Cr. 980 (collectively "Amended
Judgments").)  The Amended Judgments did not differ in any
material way from the initial Judgments.

**B.**

While the defendant was imprisoned, the United States
Sentencing Guidelines were amended, in relevant part, to raise
retroactively the minimum amount of crack cocaine for base

offense level 38 from 1.5 kilograms to 4.5 kilograms.  See U.S.
Sentencing Commission, Guidelines Manual Supp. App. C, Vol. III,
amend. 706 (2011) (effective Nov. 1, 2007) (adjusting
Guidelines); id. amend. 713 (effective Mar. 3, 2008) (making
Amendment 706 retroactive).  In response to these amendments, on
March 3, 2008, the defendant made a motion to reduce his
sentence pursuant to 18 U.S.C. § 3582(c)(2).  On August 10,
2009, Judge Marrero denied the defendant's pro se motion because
"the quantity of crack cocaine at issue exceeds 4,500 grams" and
therefore the Guidelines amendments did not alter the
defendant's sentence. (See Order Regarding Motion for Sentence
Reduction, United States v. Carty, No. 95 Cr. 980 (S.D.N.Y. Aug.
10, 2009), ECF No. 21.)  On February 9, 2011, the defendant
filed another pro se motion for sentence modification pursuant
to 18 U.S.C. § 3582(c)(2) based on the same amendments to the
Sentencing Guidelines.  On February 16, 2011, Judge Marrero
denied the defendant's motion because "Carty was convicted of
violations . . . involving more than [4.5] kilograms of crack
cocaine" and therefore the amendments would not alter the
defendant's sentence.  (See Decision and Order, United States v.
Carty, No. 95 Cr. 980 (S.D.N.Y. Feb. 16, 2011), ECF No. 23.)

     Effective November 1, 2011, Amendment 750 to the Sentencing
Guidelines permanently implemented the Fair Sentencing Act of
2010, Pub. L. 111—220, 124 Stat. 2372 (2010), which "reduced the

statutory penalties for cocaine base ('crack cocaine') offenses,
eliminated the statutory mandatory minimum sentence for simple
possession of crack cocaine, and contained directives to the
[United States Sentencing] Commission to review and amend the
[G]uidelines to account for specified aggravating and mitigating
circumstances in certain drug cases."  U.S. Sentencing
Commission, Guidelines Manual Supp. App. C, Vol. III, amend.
750.  In promulgating Amendment 750, the Sentencing Commission
gave Parts A and C of that amendment retroactive effect.  See
U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.10(c) appl.
n.4 (2011).  As relevant to this case, Amendment 750 amended the
drug quantity table to raise retroactively the minimum amount of
crack cocaine for base offense level 38 from 4.5 kilograms to
8.4 kilograms.  Id. § 2D1.1(c)(1).  On October 31, 2011, the
defendant again moved to modify his sentence pursuant to 18
U.S.C. § 3582(c).


## II.

### A.

The Federal Defenders were appointed to represent the
defendant in connection with his motion.  While they initially
sought to withdraw from representing the defendant, they have
withdrawn their motion to be relieved as defense counsel for the
defendant's case based on the North Carolina Indictment.

Because there was joint sentencing on the two cases, the Federal
Defenders remain as counsel for the defendant with respect to
the New York Information as well as the North Carolina
Indictment.


### B.

As a general rule, a federal court "may not modify a term
of imprisonment once it has been imposed."  18 U.S.C. § 3582(c);
Cortorreal v. United States, 486 F.3d 742, 744 (2d Cir. 2007)
(per curiam).  However, a court may modify the term of a
sentence already imposed "in the case of a defendant who has
been sentenced to a term of imprisonment based on a sentencing
range that has subsequently been lowered by the Sentencing
Commission . . . , if such a reduction is consistent with
applicable policy statements issued by the Sentencing
Commission."  18 U.S.C. § 3582(c)(2).  As a general matter,
"[i]n a case in which a defendant is serving a term of
imprisonment, and the Guidelines range applicable to that
defendant has subsequently been lowered as a result of an
amendment to the Guidelines Manual listed in subsection (c)
[which include the reduction in the crack cocaine Guideline],
the court may reduce the defendant's term of imprisonment as
provided by 18 U.S.C. § 3582(c)(2)."  U.S.S.G. § 1B1.10(a)(1)
(2011).  However, "[a] reduction in [a] defendant's term of

imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if . . . [the] amendment . . . does not have the effect of lowering the defendant's applicable guideline[s] range." Id. § 1B1.10(a)(2)(B). The Supreme Court has recently explained that § 3582(c)(2) proceedings are not governed by United States v. Booker, 543 U.S. 220 (2005), and therefore, the Sentencing Commission's policy statement as announced in U.S.S.G. § 1B1.10 is binding on the Court. See Dillon v. United States, 130 S. Ct. 2683, 2692-93 (2010); United States v. Sandoval, No. 07 Cr. 305, 2012 WL 1646874, at *1 (S.D.N.Y. May 10, 2012).

In Dillon, the Supreme Court identified a two step-inquiry for courts to follow in adjudicating a motion for a sentence reduction under 18 U.S.C. § 3582(c). 130 S. Ct. at 2691-92. First, the Court must determine whether the defendant is eligible for a sentence reduction. Id. at 2691. Second, if the court finds that the defendant is eligible for a sentence reduction under § 3582(c) and § 1B1.10, the district court must determine whether, "in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted . . . ." Id. at 2692.

**1.**

The Court must first determine whether Amendment 750 affected the defendant's sentence. See id.  The Government argues that because Judge Schwartz adopted the factual findings of the PSR in his written Judgments, including the portion of the PSR that the defendant had distributed upward of 11 kilograms of crack cocaine, Amendment 750 had no effect on the defendant's sentence.  The defendant counters that he only admitted to the minimum quantity of crack cocaine required for base offense level 38 at the time of his plea, namely, 1.5 kilograms, and moreover Judge Schwartz's express oral finding at the sentencing hearing was mathematically incompatible with a factual finding of more than 1.5 kilograms of crack cocaine. The record at the sentencing hearing is clear that Judge Schwartz based his Guidelines calculation on a factual finding of only 1.5 kilograms of crack cocaine, and the defendant is therefore eligible for a sentencing reduction under the amended Guidelines.

To determine a defendant's eligibility for a sentence reduction, "the court shall determine the amended [G]uidelines range that would have been applicable to the defendant if [Amendment 750] had been in effect at the time the defendant was sentenced.  In making such determination, the court shall . . . leave all other guideline application decisions unaffected."

12

U.S.S.G. § 1B1.10(b)(1).  A defendant is ineligible for a sentencing reduction if an amendment with retroactive effect does not modify the applicable Guidelines range for the defendant.  Id. § 1B1.10 appl. n.1(A).  Amendment 750 retroactively raised the minimum amount of crack cocaine for base offense level 38 from 4.5 kilograms to 8.4 kilograms and lowered the offense level applicable to 1.5 kilograms of crack cocaine to base offense level 34.  Id. §§ 1B1.10(c) appl. n.4, 2D1.1(c)(1).  Therefore, the key issue is what quantity of crack cocaine Judge Schwartz attributed to the defendant at the sentencing hearing.

Judge Schwartz found at the sentencing hearing that the defendant was only responsible for 1.5 kilograms of crack cocaine.  It is settled law that "in the event of variation between an oral pronouncement of sentence and a subsequent written judgment, the oral pronouncement controls."  United States v. Rosario, 386 F.3d 166, 168 (2d Cir. 2004) (citing United States v. Handakas, 329 F.3d 115, 117 (2d Cir. 2003)).  Although the PSR attributed at least 11 kilograms of crack cocaine to the defendant, (PSR ¶ 15), and Judge Schwartz's written judgment subsequent to the sentencing hearing accepted the findings of fact in the PSR (see Judgments), the written judgment is inconsistent with the Judge's findings at the sentencing hearing.  At the hearing, Judge Schwartz announced

13

his findings of fact and adopted paragraphs 30 and 31 of the PSR: the defendant's crimes "involved the receipt and distribution of in excess of 1.5 kilograms of crack cocaine . . . at least five kilograms of cocaine and approximately 116 grams of heroin in New York.  When these amounts of narcotics are converted to marijuana, their aggregate weight is approximately 30,300 kilograms of marijuana." (Sentencing Tr. 21-22.)  As the defendant argues correctly, based on the drug equivalency tables in effect at the time of sentencing, 1.5 kilograms of crack cocaine was equal to 30,000 kilograms of marijuana.  See U.S.S.G. § 2D1.1 cmt. n.10 (1998).  Therefore, because the Judge announced an aggregate weight of only 30,300 kilograms of marijuana, given that there were five kilograms of cocaine and 116 grams of heroin as well, Judge Schwartz could not possibly have found the defendant culpable for more than 1.5 kilograms of crack cocaine.[3]  Based on the record at the sentencing hearing, a finding of 11 kilograms of crack cocaine was not possible.

Moreover, Judge Schwartz's oral pronouncement on the aggregate quantity of converted marijuana attributable to the defendant makes it mathematically impossible for the defendant

---

[3] Judge Schwartz indicated that the aggregate weight was approximate.  Had he specifically calculated the aggregate weight based upon the amount of cocaine (5 kgs), heroin (116 grams), and crack cocaine (1.5 kgs), the result would have been 31,116 kg of marijuana.  This precise calculation would not have resulted in a different sentence and was not far from the approximation made in both the PSR and in the oral pronouncement.

14

to have been attributed the quantity of crack cocaine the
Government urges.  Had Judge Schwartz agreed with the Government
or with the portion of the PSR that indicates that the defendant
was responsible for at least 11 kilograms of crack cocaine, the
aggregate weight of crack cocaine converted into marijuana would
have been at least 220,000 kilograms of marijuana.  Judge
Schwartz only found an approximate aggregate weight of 30,300
kilograms of marijuana, which, even excluding the heroin and
cocaine, could only be the result of a finding of 1.515
kilograms of crack cocaine.

The Government argues that such a high aggregate quantity
was not orally pronounced by Judge Schwartz because it was not
necessary, in view of the fact that the highest base offense
level had already been triggered.  However, this argument
ignores the fact that courts do in fact explain their findings
with respect to marijuana conversions even if such conversions
are far more than the 30,000 kilograms necessary to trigger the
highest base offense level.  See, e.g., United States v.
Enriquez, No. 02 Cr. 1536, 2005 WL 3099017, at *4 (S.D.N.Y. Nov.
17, 2005) (finding an aggregate quantity of 50,000 kilograms of
marijuana); see also United States v. Alanis, 265 F.3d 576, 590
(7th Cir. 2001) (660,481.648 kilograms of marijuana).  In any
event, Judge Schwartz made oral findings that the approximate
total weight of the drugs including crack cocaine had a

15

marijuana equivalent of 30,300 kilograms, which is incompatible with an amount of crack cocaine in excess of about 1.5 kilograms.  Despite the subsequent written Judgments in which the Court adopted the factual findings of the PSR, because there is a contradiction between paragraph 15 of the PSR and the oral pronouncement, the oral sentence controls.  See Rosario, 386 F.3d at 168.

The Government also argues that because the defendant waived his Fatico hearing, he consented to the factual findings of the PSR.  Not only is this argument contradicted by the express oral findings of the Court discussed above, it ignores the context in which the defendant waived the Fatico hearing. Judge Schwartz explicitly stated that based only on the record presented to him at the sentencing hearing, a finding as to the quantity of crack cocaine was not possible.  (Sentencing Tr. 4.) Rather than hold a Fatico hearing, the defendant agreed at the sentencing hearing that he would not contest the quantity necessary to meet the minimum for the highest base offense level, 1.5 kilograms of crack cocaine.  (Sentencing Tr. 9.)  The Government did not object or argue that a hearing on drug quantity should still be held, likely because it too was satisfied with an arrangement by which the defendant would admit to the lowest amount necessary for the highest base offense level at the time.  In light of this apparent agreement among

16

the parties that the defendant would admit to the minimum for
the highest base offense level and the Government would not
argue for a higher quantity of drugs attributable to the
defendant, the Government is foreclosed from arguing, as it does
here, that the defendant admitted to any drug quantity in excess
of the amount he actually admitted to at the time.  The
defendant's concession to "1.5 kilograms or more" is not an
admission of responsibility for 11 kilograms of crack cocaine.

This case is similar to United States v. Chaparro, No. 89
Cr. 99, 2012 WL 3242337 (S.D.N.Y. Aug. 9, 2012).  In Chaparro,
the defendant pleaded guilty to a narcotics conspiracy in
violation of 21 U.S.C. § 846.  Id. at *1.  At the defendant's
sentencing hearing, despite evidence of far larger quantities,
Judge Stanton of this Court found that the information adduced
would "easily support the 500 grams" of crack cocaine necessary
to meet base offense level 36 in effect at the time.  Id. at *2.
After Amendment 750, Chaparro, like the defendant in this case,
moved for a sentencing reduction.  Id. at *1.  The Government
argued that Chaparro was responsible for a far larger quantity
of drugs, sufficient to deny the motion for a sentence reduction
notwithstanding Amendment 750.  Id.  Judge Stanton granted the
motion for a sentence reduction, explaining that the sentencing
determination "amounted to no more than finding that Mr.
Chaparro was responsible for at least the 500 grams" and

although "much of the trial evidence could have supported a finding of a considerably larger amount . . . I made no finding of a larger amount then and, over 20 years later, I make no such finding now." Id. at *2. Similarly, in this case, although there is evidence in the PSR that could have supported a larger quantity finding, no such finding was made at the time of sentencing.

The defendant is eligible for a sentencing reduction under the Guidelines. The defendant's sentencing range under the Guidelines in effect at the time of his initial sentencing was 262 to 327 months imprisonment. (Sentencing Tr. 28.) Under the now-amended Guidelines, the 1.5 kilograms of crack cocaine attributable to the defendant, together with the other drugs included in the sentence computation, leads to a base offense level of 34, which after applying the three level acceptance of responsibility downward adjustment and two level obstruction of justice enhancement yields a total offense level of 33. U.S.S.G. § 2D1.1(c)(3). Base offense level 33 and the defendant's Criminal History Category III yields a Guidelines sentencing range of 168 to 210 months imprisonment. Because this sentencing range is lower than the defendant's initial sentencing range, the defendant is eligible for a reduction.

**2.**

Although the defendant is eligible for a sentence reduction, that is not the end of the inquiry.  Dillon step two requires that the Court "consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case."  Dillon, 130 S. Ct. at 2692.  "Because the statute states that a district court may reduce the term of imprisonment, it clearly allows for a district court to exercise its discretion when considering a motion to reduce a sentence brought pursuant to § 3582(c)(2)."  United States v. Borden, 564 F.3d 100, 104 (2d Cir. 2009).  In addition to the traditional § 3553(a) factors,  a court can consider the post-sentencing behavior of the defendant and any public safety concerns a reduction in sentence would raise in deciding: (1) whether a reduction in the defendant's term of imprisonment is warranted, and (2) what sentence to impose within the applicable amended Guidelines range.  See § 1B1.10 appl. n.1(B)(ii-iii).

The Court has reviewed the parties' submissions including the record of the defendant's post-sentencing behavior.  These materials support granting the motion for the sentence reduction.  While imprisoned, the defendant has had good behavior, has received his G.E.D., and has participated in a

number of programs that demonstrate his commitment to abiding by
the law.  Any public safety concerns are diminished because it
is likely that the defendant will be removed from the United
States after his release from imprisonment.

The Government has made no argument that the § 3553(a)
factors weigh against granting a sentence reduction.  Applying
the factors under 18 U.S.C. § 3553(a), as required by 18 U.S.C.
§ 3582(c)(2), particularly, the nature and circumstances of the
offense and the history and characteristics of the defendant,
§ 3553(a)(1); the need for the sentence imposed to afford
adequate deterrence to criminal conduct, § 3553(a)(2)(B); and
the applicable policy statements issued by the Sentencing
Commission, see U.S.S.G. § 1B1.10; 18 § 3553(a)(5)(A), the Court
finds that a sentence reduction is warranted.

The Court finds that a sentence reduction to 186 months
imprisonment is the reasonable and appropriate sentence.
At the time of the initial sentencing, the defendant's
Guidelines range was 262 to 327 months and Judge Schwartz
indicated that he believed that 290 months, a sentence
"somewhere in the middle of the guideline[s] range," was
appropriate.  (Sentencing Tr. 33.)  "Applying the same
proportionate decrease from the Sentencing Guideline Range that
the Court applied at the time of sentence," United States v.
Sosa, No. 03 Cr. 502, 2008 WL 336472, at *1 (S.D.N.Y. Feb. 6,

2008), to the new Guidelines range of 168 to 210 months results in a sentence of 186 months imprisonment.  See also United States v. Fleming, 845 F. Supp. 2d 470, 475 (N.D.N.Y 2012) (keeping new sentence at the "high end of the [G]uidelines range" in proportion with former sentence).  The defendant's motion for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(2) is granted.

## CONCLUSION

The Court has carefully considered all of the parties' arguments.  To the extent not specifically addressed above, the remaining arguments are either moot or without merit.  For the reasons set forth above, the defendant's motion for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(2) is **granted** and the 290 month term of imprisonment imposed upon defendant is reduced to 186 months.  The defendant should also receive credit, as Judge Schwartz previously indicated, for time served in prison in the Dominican Republic.  The applicable provisions for supervised release, and other release conditions remain in effect.  The Government is directed to convey this Order to the Bureau of Prisons so that the Bureau of Prisons can promptly calculate the new release date for the defendant.  **The Clerk is directed to close Docket Nos. 24 and 26 in 95 cr. 980.**

SO ORDERED.

Dated:   New York, New York
         October 11, 2012

                                 John G. Koeltl
                          United States District Judge

22